The Honorable Judge of the United States Court of Appeals in and for the Session of the Judicial Circuit. Hear ye! Hear ye! Hear ye! All persons having business before the Honorable Court are admonished to draw near and pay their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning, everyone, and welcome. We have nine cases on this morning's calendar, one of which will be considered on the briefs. We have eight arguments, and we'll begin with our first case, Luis Roldan v. Jason Stroud and others. It's Appeal Number 21-27-22. Ms. Granfield? Good morning. Good morning and may it please the Court. Cynthia Granfield on behalf of Defendants. I'd like to reserve two minutes for rebuttal, please. The trial court wrongfully denied qualified immunity to the defendant officers in this case with respect to assistance in the application of a U-Visa. The trial court wrongfully denied qualified immunity for three reasons in this case. First, the trial court inappropriately applied a high level of generality, particularly in a case that involves a complex area of law, which is immigration law. Second, the trial court improperly applied cases that weren't decided at the time of Roldan's arrest in 2011 or his conviction in 2013. Third, the trial court improperly applied Illinois appellate court decisions spread out over several years as a clearly established law, which I would argue does not comport with Seventh Circuit case law as to the determination as to when a law is clearly established, and also does not comport with what some of the sister circuits have said with respect to Illinois appellate court, with respect to state appellate court decisions, excuse me, not what other circuits have said with respect to Illinois appellate court decisions, that would make sense. With respect to the high level of generality, the court basically just cited two cases where a basis for impeachment could be immigration law. However, this involves a U-Visa, and the court failed to acknowledge the fact that immigration law is a complex area of law, much like this court has acknowledged with respect to, for example, that law enforcement officers should not be required to try and deduce and determine the acknowledgement that this is a complicated area of laws by the fact that this U.S. court system has a specific immigration court system, as well as the fact that the U.S. court system, there is a bill in legislature currently pending even asking that the courts have an Article 1 specialty court for immigration courts. Ms. Graff, can I ask you a question about your amended complaint, please? Sure. In paragraph 109 of the second amended complaint, which I believe is the operative complaint we're working off of, you've alleged that knowing their Brady and Gigli obligations, and I'm going to quote now, the defendants in concert with the prosecution intentionally failed to disclose such material information to the defense. Could you please explain what you mean when you say the defendants who are the officers here in concert with the prosecution? So I represent the defendant officers, so I would say in this case that that is part of the issue where the plaintiff in this case is essentially arguing that the defendants are responsible for not only disclosing this to the prosecutors, but actually disclosing this to criminal defense counsel and the court, because they don't have any further allegations about this. And also in paragraph 92 and paragraph 108 of the second amended complaint in A77 and A78, they reference the fact that the defendant officers did not tell the court or the defense counsel. Is there any evidence, and I know we're at the motion to dismiss stage, but has there been any evidence or any allegation that this information was turned over to the prosecution in advance of the trial? I don't believe that there, I believe that the pleadings by its own allegation contends that the prosecution was aware of the U-Visa, but at the same time doesn't name the prosecutors as defendants. So where, if you know it off the top of your head, other than this paragraph 109 that we're talking about, where in the pleadings does it suggest that the prosecution knew of the U-Visa in advance of trial? I would suggest, again, I would point to paragraphs 92 and 108 and 109 collectively, which all indicate that there was a conspiracy with the prosecution to conceal this with the defense, which implicitly infers that the prosecution was in fact aware of this U-Visa assistance and application at the time of trial. And wouldn't that impact your client's liability if the prosecution knew about it in advance and didn't turn it over? Yes, I would argue that in this instance, because the prosecution is not named as a defendant and there's no conspiracy claim alleged against the prosecution, that that would actually ameliorate and make my client not liable in this case under Whitlock and Well, so is that another way, Ms. Granfield, of saying that if as a factual matter it was established that one or more of the defendant police officers made the prosecutors alleged aware of the U-Visa arrangement would entirely eliminate the possibility of 1983 liability for your clients, wouldn't it? Yes. I mean, it just is a matter of where our law is. Because the point there would be that it was up to the prosecutor to make the Brady disclosure. The police officers were not required beyond making the prosecutor aware to communicate with plaintiff's counsel. Correct. Yeah, and so the question I have from that is given the paragraphs that Judge St. Eve was referencing in the second amended complaint, why isn't it proper here just to move beyond the motion to dismiss stage and get it established as a factual matter whether any of the police officers transmitted this information to the prosecutors or the prosecutors were otherwise aware of it? Isn't that the simplest way to resolve it? There's a lot of other questions that are in the backdrop of these briefs that are not easy, but this factual point could entirely resolve the case. I believe that it's not necessary to go to that factual point, and in this instance it would be appropriate for the qualified immunity to be determined at the dismissal stage with respect to the law of the fact that they should not be responsible for understanding and applying the intricacies of immigration law, particularly in this case where you have a U-Visa where it's questionable as to what they know, when they know it, who's responsible, and how they exactly can convey that information. Let me ask you this. Do you think it is clearly established that law enforcement has to make information about a material benefit conferred upon a material witness known to its adversary? Yes, but I do not believe that in this instance it is a material benefit. Okay. Yeah. Okay. I understand your position. Okay. I said I was going to reserve two minutes for rebuttal, so if there's no more questions, then I'll go ahead and let my appellee take over. Okay. Absolutely. Mr. Shim, good morning to you. Good morning. May it please the Court, my name is Sam Shim on behalf of Mr. Louis Roldan. It was clearly established, certainly dating as early as 1972 when Giglio was decided that prosecution and the police had to turn over impeachment evidence to the defense. Can you start where Judge Saini was starting? Can you start with the complaint, and I'm sorry for throwing you that loop in the beginning here, but the facts as alleged seem important to me. They are. And focus on paragraph 109, if you would, please. The discovery conducted thus far, the police officers have uniformly professed no knowledge of the U visa issue. Was the prosecution aware of it in advance of trial? The reasonable inference is that they certainly knew about it because the discovery has disclosed that the prosecution has signed off on the U visa petition. When you said they just now, were you referring to the prosecutors or the police? Prosecution. Okay. Yeah. So it's undisputed at this point that the police officers, according to their sworn testimony, are claiming that they knew nothing about the U visa issue. The reasonable inference based on discovery is that the prosecution certainly knew. How can there be, go ahead. In paragraph 109 of your complaint, is that what you were alleging then, that the prosecution knew about this material and in connection with the defendants intentionally failed to disclose it? That is the point of that paragraph. I'm sorry. I didn't mean to interrupt. If the prosecutors knew about it then, under our case law in this circuit, how can the officers be liable under 1983 for it? Well, it's our position that the police officers certainly knew about it, notwithstanding their testimony. No. Let's assume they knew. We'll draw all reasonable inferences in your favor or your client's favor, Mr. Shim. Our case law is pretty clear that if officers turn over information to the prosecutor, that the officers cannot be responsible for a 1983 violation, that it then becomes the obligation of the prosecutor to turn it over. So that ultimately raises the question, is this a factual question that has to be decided in the district court, not on an appeal? That's why I'm asking about your allegations in your complaint. Right. So, still we don't know and we're in the middle of discovery. We're trying to . . . Hold on. Hold on. Let's forget discovery for a second. Okay. Are you acknowledging that the fair import of the allegation in paragraph 109 of the second amended complaint is that the prosecutors, prosecutor or prosecutors plural, knew about the alleged agreement? Before you answer, you also must address 108. 108 specifically says, defendants along with the prosecutors in the underlying criminal prosecution knew or should have known that the promised U visa assistance was there. Right. So, answering your question . . . Yeah. Both paragraphs. What's the right way to read them with respect to the knowledge of prosecutors, not police officers, prosecutors . . . In advance of trial. Well, we still don't know the clear answer to that, but the import of the allegation of those two paragraphs is that the police officers knew and there's still a question as to whether or not . . . Okay. Focus on exactly what we're asking you. Set aside police officer knowledge. Do those paragraphs, and you can probably add, what, 90, 98, 97, do those paragraphs in your view allege that the prosecutors knew? I'm sorry, but I don't have 97 and 98 . . . Do you have your briefs? I do, Judge, but . . . Do you understand why we're focused on it? Because there's a possibility, I know this isn't what you want to hear, there's a possibility that you may have pledged your way out of the Brady claim. And the reason is because if the prosecutors knew, our case law is pretty clear that it's the prosecutors that shoulder the disclosure obligation. The police are not under an independent constitutional obligation to communicate with opposing counsel. Well, with all due respect, I don't think I have. There still is a question as to whether or not the prosecutors learned or knew of the U visa agreement from the police. How do we get that from what you've alleged in paragraphs 108 and 109? That they conspired? That defendants in concert with the prosecution intentionally failed to disclose such material to the defense, and defendants along with the prosecutors in the underlying criminal prosecution knew or should have known that the promised U visa assistance on the part of the police and the prosecutors were favorable to the defense. Well, in hindsight, I think it probably should have been pled upon information and belief. But having pled it that way. I'm not sure that would save you. If you're still, upon information and belief, alleging the same thing. I'm trying to understand why you just said there's a question about whether the prosecutors learned it from the police. Why does that matter where the prosecutors learned of the U visa assistance if they ultimately knew of that fact? Because that would support the allegations in 108 and 109. Prosecutor could have learned of that information independent of the police. We don't know that yet because we're still trying to depose or gather information from the complaining witness herself. Yes. You're focused on discovery and what's being revealed and not revealed in depositions or other forms of the discovery process. We're focused 100% on what's in the second amended complaint. Well, I think you need to take into consideration what was developed in the discovery. How? How do we know it? I don't have any idea. Well, the issue that they raise is qualified immunity. And the issue is whether or not the law as it relates to disclosure of Brady-Iglio information was well-established. Right. But we're measuring it against the allegations in your complaint. You're right if what you're suggesting is that many, many qualified immunity cases come to us on summary judgment. There's no question you're right about that if that's what you're saying. But this isn't that case. This is a case that comes to us on a pleading. So we have to read the complaint like we're doing. And it sure looks like you may have alleged that the prosecutors knew about the alleged arrangement with the U-Visa. And if they knew it, that becomes a problem with respect to 1983 liability against the police officers. And my position still is we don't know the answer to that, Judge. Okay. But are you saying that as a matter of fact as you stand here right now? You don't know it as a matter of fact as you're standing in the courtroom right now? That's what you're saying? As to whether or not the prosecution knew? Right. Yes. Okay. Now, set aside that. What do you think your complaint alleged? That both sides, the police and the prosecution, conspired and they withheld that information. Okay. And in order to withhold it, they would have had to have known it. Well, the reasonable inference is yes, that is the inference, Judge. At this point, what I'm saying is we don't know when and how the police officer, the prosecution found out about the U-Visa arrangement. And the district court properly analyzed the issue and considered all of the appropriate case law in determining that they did indeed have an obligation to disclose it. And they erred in not doing that. So for those reasons and the reasons stated in our brief, Mr. Roldan respectfully requests this court to affirm the district court's opinion. Okay. Very well. Thank you, Mr. Shim. Ms. Granfield, you have those couple minutes. Thank you. I just wanted to reaffirm the fact that there is not clearly established law that the officers had an independent duty to separately disclose this to defense counsel and the court that would be in derogation of Gowdy and Whitlock, that this should particularly be the case with respect to immigration law, which is complicated and should further be the case while not directly applicable with respect to the intent and spirit of the Violence Against Women's Act, which provides many areas of confidentiality and nondisclosure and even fines people for disclosure in that case. I don't understand how an obligation, a statutory obligation to keep something confidential could prevent you or shield you from your constitutional obligation to turn over Giglio material. I mean, you think about classified information, that has to be turned over in some form and there are clear statutes that protect it. Right. I would say that in this instance, it causes further confusion for the officer because, again, going back to my point, I think this is a protection more than it is a benefit, so the officer might not wreck it. Protection for who? A protection for the victim of the crime, a protection with respect to immigration and a protection with respect to nondisclosure, so they might not be able to... How could that protection absolve the officers of a constitutional obligation to turn over a material benefit if that victim is a witness? My point would be that the officer might not recognize that this would qualify as a benefit under Brady-Giglio and instead understand it as a specific protection under immigration law. I see my time has expired. Thank you for your consideration. Thanks to both counsel. We'll take the case under advisement.